GMK:TSJ:sms

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS PETOFF,** | **:** | **No. 3:24-CV-00078** |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | **(Mariani, J.)** |
| | **:** | |
| **LT. DELMONICO, NURSE YONKIN,** | **:** | |
| **WARDEN OF FCI-ALLENWOOD,** | **:** | |
| **JOHN DOE HEALTH SERVICE** | **:** | |
| **ADMINISTRATOR,** | **:** | |
| **Defendants** | **:** | **Filed Electronically** |

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Respectfully submitted,

GERARD M. KARAM
United States Attorney

s/Timothy S. Judge
Timothy S. Judge
Assistant U.S. Attorney
PA 203821
Stacey M. Spring
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Telephone: (570)348-2800
Facsimile: (570)348-2037
Timothy.Judge@usdoj.gov

Date:  May 20, 2024

i

## **<u>TABLE OF CONTENTS</u>**

I.      Introduction              ..................................................................1

II.     Procedural History        ..................................................................2

III.    Factual Background        ..................................................................2

IV.     Questions Presented       ..................................................................3

V.      Legal Standards           ..................................................................3

VI.     Argument                  ..................................................................5

        A.      The Court should dismiss Plaintiff's Complaint because *Bivens*
                should not be extended to Petoff's Frist Amendment retaliation
                claim or any Eighth Amendment conditions of confinement
                claim. ......................................................................5

        B.      Alternatively, the Court should grant summary judgment to
                Defendants because the favorable termination rule bars
                Plaintiff's claims................................................15

VII.    Conclusion .................................................................19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................3, 4

*Bistrian v. Levi*,
    912 F.3d 79 (3d Cir. 2018).....................................................................7, 8

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971)...............................................................................1, 5

*Blair v. Scott Specialty Gases*,
    283 F.3d 595 (3d Cir. 2002)......................................................................5

*Bossio v. Spaulding*,
    2021 WL 4123975 (M.D. Pa. Sept. 9, 2021) ...........................................9

*Carlson v. Green*,
    446 U.S. 14 (1980)....................................................................................5

*Correctional Services Corporation v. Malesko*,
    534 U.S. 61 (2001)..................................................................................10

*Davis v. Passman*,
    442 U.S. 228 (1979)..................................................................................5

*Dockery v. Baltazar*,
    2021 WL 2014969 (M.D. Pa. May 19, 2021) ..........................................8

*Edwards v. Balisok*,
    520 U.S. 641 (1997)............................................................................ 16, 19

*Egbert v. Boule*,
    596 U.S. 482 (2022).......................................... 6, 7, 9, 10, 11, 12, 13, 14

*Heck v. Humphrey*,
    512 U.S. 477 (1994)............................................................................ 15, 16

*Hernandez v. Mesa*,
    589 U.S. 93 (2020)..................................................................................11

*Johnson v. USP Canaan*,
    2022 WL 1750622 (M.D. Pa. May 31, 2022)...........................................8

*Jones v. Sposato*,
   783 F. App'x 214 (3d Cir. Aug. 5, 2019) ................................................7

*Jones v. United Parcel Serv.*,
   214 F.3d 402 (3d Cir. 2000)................................................................5

*Landis v. Ebbert*,
   2020 WL 5819766 (M.D. Pa. Sept. 30, 2020) ......................................8

*Landis v. Moyer*,
   610 F. Supp. 3d 649 (M.D. Pa. July 11, 2022) ...................................11

*Lora-Pena v. F.B.I.*,
   529 F.3d 503 (3d Cir. 2008)...............................................................17

*Louis-El v. Ebbert*,
   448 F. Supp. 3d 428 (M.D. Pa. 2020) ..................................................9

*Mack v. Yost*,
   968 F.3d 311 (3d Cir. 2020)................................................................7

*Morgan v. Shivers*,
   2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) ........................................14

*Morrison v. United States*,
   2021 WL 3033829 (M.D. Pa. July 19, 2021) ........................................8

*Overton v. Bazzetta*,
   539 U.S. 126 (2003)...........................................................................14

*Peguero v. Quay*,
   2023 WL 2410882 (M.D. Pa. Mar. 8, 2023) ........................................8

*Procunier v. Martinez*,
   416 U.S. 396 (1974)...........................................................................12

*Simmons v. Maiorana*,
   2019 WL 4410280 (M.D. Pa. Aug. 23, 2019) ......................................8

*Straker v. Valencik*,
   2021 WL 1134591 (M.D. Pa. Mar. 24, 2021) ......................................8

*Turner v. Safely*,
   482 U.S. 78 (1987).............................................................................13

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017)...........................................................7, 13

*Wilkie v. Robbins*,
   551 U.S. 537 (2007).............................................................................6

*Wilkinson v. Dotson*,
   544 U.S. 74 (2005).......................................................................16, 17

*Williams v. Hill*,
   74 F.3d 1339 (D.C. Cir. 1996)............................................................17

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
   808 F.3d 638 (3d Cir. 2015)................................................................4

iii

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................. 5, 6, 7, 9, 12, 13, 15

Statutes

5 U.S.C. § 301 ............................................................................................11
18 U.S.C. § 4001(b)(1)................................................................................10
42 U.S.C. § 1983 ................................................................................. 15, 16

Rules

Fed. R. Civ. P. 12(b)(6)................................................................................3
Fed. R. Civ. P. 56(a)....................................................................................4

Regulations

28 C.F.R. § 542.10(a)................................................................................10

# I.    INTRODUCTION

Defendants, Lt. Delmonico and Nurse Yonkin, submit this brief in support of their Motion to Dismiss and/or for Summary Judgement with respect to this *Bivens*[1] action filed by Thomas Petoff (Petoff).   Petoff is a federal inmate who alleges the Defendants retaliated against him by causing him to be placed in the Special Housing Unit (SHU) at the Federal Correctional Institution Allenwood (FCI Allenwood) and to incur the loss of good conduct time because he previously filed a grievance against Defendant Yonkin.

This Court should dismiss the Complaint or grant summary judgment to the Defendants because *Bivens* should not be extended to Petoff's First Amendment retaliation claim or to any Eighth Amendment conditions of confinement claim.[2] Alternatively, the favorable termination rule bars the claims because a favorable decision in this lawsuit would necessarily implicate the invalidity of the

---

[1] *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] In his complaint, Petoff invokes the Eighth Amendment, Sixth Amendment, the "ADA," and the Rehabilitation Act.   (Doc. 1 at Section II., C.)   It is unclear how these various authorities may relate to Petoff's terse narrative in his complaint. However, a liberal reading may support the inference that Plaintiff is attempting to bring a First Amendment retaliation claim or an Eighth Amendment conditions of confinement claim.   Based on the following, neither claim is cognizable and both claims, indeed any claim, is precluded by the favorable termination rule.

disciplinary sanctions issued for the same conduct which included SHU confinement and the loss of good conduct time.

## II.   PROCEDURAL HISTORY

Petoff initiated this *Bivens* action on January 16, 2024.  (Doc. 1, Compl.) Defendants filed their Motion to Dismiss and/or for Summary Judgment on April 8, 2024.  (Doc. 14, Mot.)  On April 17, 2024, the Court granted Defendants an enlargement of time until May 20, 2024, to file their supporting brief and statement of material facts.  (Doc. 16, Order.)  This supporting brief is filed concurrently with Defendants' Statement of Material Facts.  (Doc. 14, Mot.)

## III.   FACTUAL BACKGROUND

Petoff is currently designated to the United States Penitentiary Coleman I (USP Coleman I) in Sumter County, Florida where he is serving a 168-month term of incarceration imposed in the Western District of Pennsylvania for a conviction of sex trafficking of a child and conspiracy to commit sex trafficking.  (Statement of Material Facts (SMF) ¶¶ 1, 4.)  His expected release date is presently calculated as April 1, 2028 via Good Conduct Time release.  (SMF ¶ 2.)

While confined at FCI Allenwood, Petoff was issued an incident report No. 3555869.  (SMF at ¶ 5.)  A Disciplinary Hearing Officer (DHO) found that Petoff committed the prohibited act of Conduct Which Disrupts Most Like Sexual Assault by threat or force, in violation of Code 199 most like 114.  (*Id.*)  The underlying

incident occurred on October 10, 2020, and involved an interaction with Defendant Yonkin who charged that Petoff touched her hand and buttocks in Health Services when she was helping him with an issue with his wheelchair.  (*Id.* at ¶ 6.)  Yonkin reported the incident to Lt. Delmonico.  (*Id.* at ¶ 7.) The DHO imposed sanctions including the disallowance of 41 days of good conduct time and the forfeiture of 150 days non-vested good conduct time.  (*Id.* at ¶ 21.)  The DHO sanction was upheld in an administrative appeal filed by Petoff.  (*Id.* at ¶ 23.)

## IV.   QUESTIONS PRESENTED

**A.     Whether the Court should dismiss Plaintiff's Complaint because *Bivens* should not be extended to Petoff's First Amendment retaliation claim or any Eighth Amendment conditions of confinement claim?**

**B.     Alternatively, whether the Court should grant summary judgment to Defendants because the favorable termination rule bars Plaintiff's claims?**

**Suggested answers:  in the affirmative.**

## V.   LEGAL STANDARDS

**A.     Dismissal – Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.*, quoting

3

*Twombly*, 550 U.S. at 557. To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a complaint, although a court must accept factual allegations as true, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply "an unadorned, the defendant-unlawfully-harmed-me accusations." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Additionally, a court may disregard a complaint's legal assertions – "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## B.    Summary Judgment

Summary judgment is appropriate when admissible record evidence, such as facts contained in declarations and other documents, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, a court should grant the motion if a reasonable jury could not return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In opposing summary judgment, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis v. UPMC*

*Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).  "[A] plaintiff cannot rely on unsupported allegations but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  He cannot satisfy this burden with an affidavit or declaration that sets forth "opinions or conclusions" rather than "specific facts."  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (internal quotation marks omitted).

## VI. ARGUMENT

**A.  The Court should dismiss Plaintiff's Complaint because *Bivens* should not be extended to Petoff's First Amendment retaliation claim or any Eighth Amendment conditions of confinement claim.**

In *Bivens*, the Supreme Court implied a damages remedy under the Fourth Amendment against federal agents who handcuffed a man in his home without a warrant.  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971).  Thereafter, the Court extended *Bivens* only twice – to a Fifth Amendment claim against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim against prison officials for failing to provide emergency medical care, *Carlson v. Green*, 446 U.S. 14 (1980).  Significantly, the Court has not recognized a new *Bivens* claim since 1980 and, in *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017), it proclaimed that "the analysis in the Court's three *Bivens* cases might

have been different if they were decided today," *Abbasi*, 582 U.S. at 134.  More recently, the Court reiterated that "[i]f there is even a ***single reason to pause*** before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (internal quotations omitted) (emphasis supplied).

Before allowing a *Bivens* claim to proceed, courts must determine if the case presents a new context that differs "in a meaningful way" from the three *Bivens* claims recognized by the Supreme Court.  *Abbasi*, 582 U.S. at 139.  If so, then courts must consider whether there is alternative existing process to protect the relevant interest and evaluate any other "special factors counselling hesitation before authorizing a new kind of federal action."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

Abundant – and binding – authority makes plain that no *Bivens* remedy exists for Plaintiff's claims under the First and Fifth Amendments based on retaliation, or due process violations concerning Petoff's SHU confinement.

### 1.    Petoff's First Amendment retaliation and Eighth Amendment conditions of confinement claims present new contexts.

Petoff's First Amendment retaliation and Eighth Amendment conditions of confinement claims present new contexts from previous cases (*Bivens*, *Carlson*, and *Davis*).  Here, Petoff alleges that Defendants retaliated against him by placing him in the SHU and causing him to incur the loss of good conduct time for

6

submitting a grievance complaining that Defendant Yonkin refused to provide him with a cushion for his wheelchair.  (Doc. 1-2.)

Petoff's alleged First Amendment Violations, however, are a new context. Indeed, post-*Abbasi*, the Third Circuit has repeatedly declined to extend *Bivens* to First Amendment retaliation claims, mostly in the prison context.  *See Mack v. Yost*, 968 F.3d 311, 325 (3d Cir. 2020) (prison context); *Bistrian v. Levi*, 912 F.3d 79, 95-96 (3d Cir. 2018)  (prison context); *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) ("The Supreme Court has never implied a *Bivens* action under any clause of the First Amendment."); *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. Aug. 5, 2019) (prison context).  To the extent any lingering doubt remained concerning retaliation claims, *Egbert* provided unequivocal clarity: "[W]e hold that there is no *Bivens* action for First Amendment retaliation." 142 S. Ct. at 1807.  Thus, to the extent Petoff has stated a First Amendment claim, it presents a new context.

Similarly, the Supreme Court observed that conditions of confinement claims present new contexts.  *See Abassi*, 582 U.S. at 140.  The Third Circuit has also rejected claims concerning conditions of SHU confinement.  In *Bistrian*, a plaintiff challenged four extensive periods of SHU confinement for violations of telephone rules.  912 F.3d at 83-85.  The court determined that the plaintiff's punitive detention claim represented a new *Bivens* context noting that "[n]either *Carlson*

nor *Davis* addressed a constitutional right against punitive detention, and that alone warrants recognizing this as a new context." *Id.* at 94.   It then reasoned that punitive detention claims "call[ ] into question broad policies pertaining to the reasoning, manner, and extent of prison discipline" that would "unduly encroach on the executive [branch]'s domain and violate serious separation of powers concerns. *Id.* at 94-95.   It therefore held a *Bivens* remedy could not extend to this context.

Since *Bistrian*, the courts in this district have repeatedly declined to extend *Bivens* to Fifth Amendment due process claims in any prison context. *See Straker v. Valencik*, 2021 WL 1134591 at *2 (M.D. Pa. Mar. 24, 2021) (transfer to high security prison and SHU confinement); *Peguero v. Quay*, 2023 WL 2410882, at *7-8 (M.D. Pa. Mar. 8, 2023) (SHU confinement during COVID-19 quarantine); *Johnson v. USP Canaan*, 2022 WL 1750622, * 7 (M.D. Pa. May 31, 2022) (SHU confinement without explanation); *Dockery v. Baltazar*, 2021 WL 2014969, *4 (M.D. Pa. May 19, 2021)*; Morrison v. United* States, 2021 WL 3033829, *13 (M.D. Pa. July 19, 2021) (failure to investigate staff misconduct and denied access to administrative remedies); *Landis v. Ebbert*, 2020 WL 5819766, *4 (M.D. Pa. Sept. 30, 2020) (denial of recreation); *Simmons v. Maiorana,* 2019 WL 4410280, *13-15 (M.D. Pa. Aug. 23, 2019) (SHU confinement).   Courts have also declined to extend *Bivens* to due process claims based on the withholding of prisoner

property.  *Bossio v. Spaulding*, 2021 WL 4123975, at *3-4 (M.D. Pa. Sept. 9, 2021); *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 439-41 (M.D. Pa. 2020).

Thus, Petoff's claims present new *Bivens* contexts.

### 2.      Special Factors caution hesitation and preclude Petoff's claims.[3]

When considering whether special factors caution hesitation from recognizing a putative *Bivens* claim, "[a] court faces only one question: whether there is *any* reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed."  *Egbert*, 596 U.S. at 496 (internal quotations omitted) (emphasis in original).  Here, there are numerous special factors, any one of which offers sufficient basis to refrain from extending *Bivens*.

### a.      Existing alternative remedial structures limit the power of the Judiciary to infer a new *Bivens* action.

The BOP's administrative remedy process, in and of itself, forecloses *Bivens* relief.   Even where a court identifies similarities with a previous *Bivens* case, *Egbert* stresses that "a court **may not** fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"  596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137) (emphasis added). In declining to extend *Bivens*, the Court in *Egbert* held that "Congress has

---

[3] The following special factors analysis is equally applicable to all of Petoff's *Bivens* claims and contexts discussed above.

provided alternative remedies for aggrieved parties in Boule's position that independently foreclose a *Bivens* action." *Id.* at 497.  Referencing with approval the BOP's administrative remedy program, the Court concluded that the U.S. Border Patrol's similar administrative process foreclosed judicial creation of a damages remedy, despite that case's similarity with *Bivens*. *Id.* at 497-98.  The Court rejected the argument that this process was inadequate, stating that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.

The BOP's administrative remedy program stems from Congress' directive that "[t]he control and management of Federal penal and correctional institutions[] . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof." 18 U.S.C. § 4001(b)(1).  Pursuant to that authority, BOP has established a process that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *see* 28 C.F.R. § 542.10(a); *see also id.* § 542.11(a) (directing that various BOP officials "shall[] . . . (3) Conduct an investigation into each Request or Appeal").)  These procedures offer a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 74 (2001).  And indeed, Petoff appealed the

10

DHO's charges, however, both the Regional Office and the Central office denied his appeals.  (SMF ¶¶ 22-24.)

Additionally, internal BOP discipline and DOJ Office of the Inspector General oversight create a significant deterrent effect.  *See Egbert*, 596 U.S. at 497-98 (discussing executive branch investigation and intra-agency oversight of employees as special factors); *Hernandez v. Mesa*, 589 U.S. 93, 103-05 (2020) (discussing DOJ's prosecution determination).  The Attorney General is obligated to "[s]upervise and direct the administration and operation of the Department of Justice," that includes the Bureau of Prisons.  28 C.F.R. § .5(a); 28 C.F.R. § .1; *see* 5 U.S.C. § 301 (authorizing the head of an Executive department to "prescribe regulations for . . . the conduct of its employees"); *see also* U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 1210.24 Internal Affairs Office (establishing an Office of Internal Affairs to receive and investigate allegations of staff misconduct).[4]

The grievance and investigation procedures described above are, as *Egbert* underscores, reason alone to hesitate before recognizing a *Bivens* remedy.  *See Landis v. Moyer*, 610 F. Supp. 3d 649, 659 (M.D. Pa. July 11, 2022) ("[t]he existence of the BOP's administrative remedy process 'independently forecloses' a *Bivens* remedy in this new context") (quoting *Egbert*).  That remains true

---

[4] Available at https://www.bop.gov/policy/progstat/1210_024.pdf (last visited May 15, 2024).

irrespective of whether a particular plaintiff ever files a grievance, or whether the BOP investigates a particular incident. Indeed, even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* relief from a federal official. *Egbert*, 596 U.S. at 1806. That is because the relevant "focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring," not whether the reviewing Court deems those adequate. *Id.* at 498 (quotations omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.

### b. Congress – not the Judiciary – has the authority to create a separate cause of action.

Separation of powers is another special factor this Court must consider. *Abbasi*, 582 U.S. 137-38; *see also Egbert*, 596 U.S. at 492 (the central question is "whether there is any reason to think that Congress might be better equipped to create a damages remedy"). This case implicates the field of prison administration and, therefore, relates to a matter that is "rarely [the] proper subject[] for judicial intervention." *Egbert*, 596 U.S. at 494. The Supreme Court has long recognized that "federal courts have adopted a broad hands-off attitude toward problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 404 (1974), because "[r]unning a prison is an inordinately difficult undertaking that requires expertise,

planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government," *Turner v. Safely*, 482 U.S. 78, 84–85 (1987).

Congress' silence must control. *Egbert* makes plain that courts must "defer to congressional inaction if the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms." 596 U.S. at 501 (internal quotations omitted). "At bottom, creating a cause of action is a legislative endeavor . . . [a]nd the Judiciary's authority to do so at all is, at best, uncertain." *Id.* at 491.

      **c.**    **Creating a *Bivens* remedy here would have unpredictable, systemwide consequences.**

The Court should consider the harmful effect expanding *Bivens* would have on the discharge of official BOP duties. Officials "who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." *Abbasi*, 582 U.S. at 145; *see also Egbert*, 596 U.S. at 499 (observing that *Bivens* claims entail "substantial costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge or their duties") (citation and quotation omitted); *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017) ("The threat of damages liability could [] increase the probability that a TSA agent would hesitate in making split-second decisions about suspicious passengers."). In the prison context especially, courts "must accord

substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).    BOP staff need to be able to react quickly and balance the needs of a diverse inmate population without fear that every decision could land them in court with their personal assets on the line. *See Morgan v. Shivers*, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018).

Creating a personal damages remedy under the circumstances presented here will inextricably intertwine the judiciary into second guessing the day-to-day decisions by the Executive Branch.    Recognizing a damages remedy "is an extraordinary act that places great stress in the separation of powers." *Egbert*, 596 U.S. at 497 n.3.    "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.    Under such circumstances, the Court has ample reason to hesitate and defer to Congress.

*          *          *

In *Abbasi* and *Egbert*, the Supreme Court has made clear that courts must refrain from creating new *Bivens* actions and leave for Congress the policy choices of whether to create remedies.    One special factor alone suffices to preclude a

14

*Bivens* remedy, but multiple special factors exist here. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . ., the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature of federal-court jurisdiction under Article III." *Abbasi*, 582 U.S. at 137. The Court, therefore, should dismiss or grant summary judgment as to Petoff's *Bivens* claims.

**B.** **Alternatively, the Court should grant summary judgment to Defendants because the favorable termination rule bars Plaintiff's claims.**

Even if the Court were to extend *Bivens* to this case, the favorable termination rule bars Petoff's lawsuit because any determination that that his SHU placement or his loss of good conduct time occurred for any reason other than the reasons the DHO found him guilty of the prohibited act of conduct which disrupts most like sexual assault by threat or force, in violation of Code 199 most like 114 in connection with Incident Report 3555869, would necessarily implicate the invalidity of the disciplinary sanctioned which included the loss of good conduct time. Defendants are therefore entitled to summary judgment because Petoff's claims are barred by the favorable termination rule.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that a prisoner does not have a cause of action under 42 U.S.C. § 1983 seeking damages where success in the suit would effectively invalidate the prisoner's underlying conviction and sentence. The Court adopted

15

the favorable termination rule which provides that if the success of a § 1983 action for damages "would necessarily imply the invalidity of his conviction or sentence," his claims are cognizable only if he can prove that his conviction or sentence was reversed, invalidated, or called into question by the grant of federal habeas corpus relief. *Heck*, 512 U.S. at 486-87. The Court concluded that the prisoner's suit, which alleged that his conviction was obtained through unlawful investigatory practices and the destruction of exculpatory evidence, was an impermissible collateral attack because it could result in conflicting resolutions from parallel civil and criminal proceedings. *Heck*, 512 U.S. at 484-486.

The Court has also applied the favorable termination rule to a state prisoner's § 1983 action seeking declaratory relief and damages from an alleged procedural defect in the disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997). In *Edwards*, the prisoner had been sentenced to the loss of good time credits, however, the prisoner did not seek the restoration of the credits as relief. *Id.* at 643-44. The Court explained that the favorable termination rule applied regardless of the relief sought because "[t]he principle procedural defect" he alleged (the bias of the hearing officer) "would, if established, necessarily imply the invalidity of the deprivation of his good time credits." *Id.* at 646-48.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court summarized the favorable termination rule as follows:

16

> A state prisoner's § 1983 action is barred (absent prior invalidation) –
> no matter the relief sought (damages or equitable relief), no matter the
> target of the prisoner's suit (state conduct leading to conviction or
> internal prison proceedings) – if success in that action would
> necessarily demonstrate the invalidity of the confinement or its
> duration.

*Wilkinson*, 544 U.S. at 81-82.   Although *Heck*, *Edwards*, and *Wilkinson* involved

civil rights actions brought by state prisoners under § 1983, the favorable

termination rule has been applied to bar civil rights claims pursuant to *Bivens*.

*Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 n.2 (3d Cir. 2008) (citing *Williams v. Hill*,

74 F.3d 1339, 1341 (D.C. Cir. 1996)).

In this case, Petoff contends that in retaliation for filing a grievance against

Defendant Yonkin, he was placed in the SHU, sustained the loss of good conduct

time, and was fined $700.00.   (Doc. 1-2.)   Petoff's claims, if established, would

necessarily implicate the invalidity of the DHO's findings of guilt for his having

committed the prison offense of conduct which disrupts most like sexual assault by

threat or force and the issuance of sanctions which included the loss of good

conduct time.   (SMF at ¶¶ 18-21.)

In Incident Report No. 3555869 issued by Defendant Yonkin, she explains

how Petoff came to the health services pill line window requesting a screwdriver to

repair his wheelchair.   (*Id.* at ¶ 6.)   Defendant Yonkin unlocked the door to let

Petoff into the health services lobby.   (*Id.*)   Defendant Yonkin continued through

the locked door at the back of health services to where the tools are kept and as she

turned around to relock the door behind her, Petoff attempted to follow her into the back room. (*Id*.) Defendant Yonkin said, "No, you are not coming back here, you need to stay in the lobby." (*Id*.) Defendant Yonkin then returned to the lobby and handed Petoff a screwdriver. (*Id*.) Petoff attempted to fix the wheelchair himself but was unable. (*Id*.) Defendant Yonkin knelt behind Petoff to assist and he placed his hand over hers. (*Id*.) Defendant pulled her hand away from his and attempted to maneuver away from Petoff. (*Id*.) While attempted to maneuver away from Petoff, he reached out with his left hand and placed it on Defendant Yonkin's buttocks. (*Id*.) Defendant Yonkin was finally able to maneuver away from Petoff and told him not to touch her. (*Id*.) Defendant Yonkin ordered Petoff to provide his identification card so she could notify the Operations Lieutenant and he complied. (*Id*.) Petoff then said to Defendant Yonkin," What are you worried about? The camera can't see over here." (*Id*.) Defendant Yonkin then immediately notified the Operations Lieutenant. (*Id*.)

In reaching his decision that Petoff committed the prohibited act of Code 114 which is charged in Incident Report No. 3555869, the DHO noted that he believed the information provided by Defendant Yonkin as she derived no known benefit by providing false information. (*Id.* at ¶ 20.) Petoff appealed the DHO's decision, however his appeals were denied. (*Id.* at ¶¶ 22-23.) Petoff has not otherwise overturned the DHO's finding for Incident Report No. 3555869 in a

habeas corpus proceeding.  (*Id.* at ¶ 24.)  Thus, Petoff's claims are barred by the favorable termination rule set forth in *Heck*, *Edwards*, and their progeny. *Edwards*, 520 U.S. at 646-48.

## VII.   CONCLUSION

For these reasons, Defendants respectfully request this Court grant their Motion to Dismiss and/or for Summary Judgment in its entirety.

Respectfully submitted,

GERARD M. KARAM
United States Attorney

s/ Timothy S. Judge
Timothy S. Judge
Assistant U.S. Attorney
PA 203821
Stacey M. Spring
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Telephone: (570) 348-2800

Date: May 20, 2024            Facsimile: (570) 348-2830

19

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS PETOFF,** | : | **No. 3:24-CV-00078** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Mariani, J.)** |
| | : | |
| **LT. DELMONICO, NURSE YONKIN,** | : | |
| **WARDEN OF FCI-ALLENWOOD,** | : | |
| **JOHN DOE HEALTH SERVICE** | : | |
| **ADMINISTRATOR,** | : | |
| **Defendants** | : | **Filed Electronically** |

## CERTIFICATE OF SERVICE BY MAIL

  The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on May 20, 2024, she served a copy of the attached

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

**Addressee:**
Thomas Petoff
Reg. No.: 37150-068
USP Coleman I
U.S. Penitentiary
P.O. Box 1033
Coleman, FL 33521

        /s/ Stacey M. Spring
        Stacey M. Spring
        Paralegal Specialist