**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

THOMAS PETOFF,                          :        Civil No. 3:24-cv-78
                                        :
       Plaintiff               :        (Judge Mariani)
                                        :
   v.                                :
                                        :
LT. DELMONICO, *et al.*,                :
                                        :
       Defendants               :

<u>**MEMORANDUM**</u>

Plaintiff Thomas Petoff ("Petoff"), an inmate in the custody of the Federal Bureau of

Prisons ("BOP"), initiated this *Bivens*[1] action pursuant to 28 U.S.C. § 1331.  (Doc. 1).

Named as Defendants are Lieutenant Delmonico and Nurse Yonkin.  (*Id.* at 2).

In April 2024, Defendants filed a motion to dismiss and/or for summary judgment.

(Doc. 14).  By Memorandum and Order dated August 20, 2024, the Court granted

Defendants' motion.  (Docs. 26, 27).  Petoff then filed an appeal with the United States

Court of Appeals for the Third Circuit.  (Doc. 32).  On October 23, 2025, the Third Circuit

affirmed this matter in large part, but remanded the matter for the District Court to allow

Petoff to file an amended complaint with respect to certain claims.[2]  (Docs. 35, 36).  The

---

[1]    In *Bivens*, the Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

[2]    The Third Court affirmed this Court's conclusion that Petoff's constitutional violations are not cognizable under *Bivens*, and that any challenge to his disciplinary proceedings is barred by the favorable

Third Circuit found that Petoff's original complaint was "sparse on details" with respect to his claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"), and his complaint was "insufficient to state a claim under either provision," but concluded that Petoff should be granted leave to amend his allegations as to those claims. (Doc. 36-2, at 5-6, *Petoff v. Lt. Delmonico*, Appeal No. 24-2933 (3d Cir.)). The Third Circuit also concluded that Petoff should be granted the opportunity to amend his claims under the Religious Freedom Restoration Act ("RFRA"). (*Id.* at 6).

In accordance with the Mandate of the Third Circuit, this Court issued an Order reopening the case and directing Petoff to file an amended complaint with respect to any claims under the ADA, RA, and RFRA. (Doc. 37). In response, Petoff filed a letter on the docket, which the Court construed as an amended complaint. (Doc. 40; *see also* Doc. 42).

Presently before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Delmonico and Yonkin. (Doc. 43). The motion is ripe for resolution. For the reasons set forth below, the Court will grant Defendants' motion.

---

termination rule, and that amendment of these claims would be futile. (Doc. 36-2, *Petoff v. Lt. Delmonico*, Appeal No. 24-2933 (3d Cir.)).

2

I.    **Allegations of the Amended Complaint**

The events giving rise to Petroff's claim occurred at the Federal Correctional Institution in Allenwood, Pennsylvania ("FCI- Allenwood"), "from February 2021 – January 2022." (Doc. 1, at 5).

Petoff asserts that he has been paralyzed and confined to a wheelchair since 2006, due to a gunshot wound. (Doc. 40, at 1).

While confined at FCI-Allenwood, Petoff alleges that he was housed in the Special Housing Unit ("SHU") for approximately six months. (Doc. 40 at 1). He asserts that the SHU does not have an elevator or other step-free access to the Unit. (*Id.*). Because there is no elevator in the SHU, Petoff alleges that he was excluded from recreational activities, denied access to the law library, prevented from participating in programs and services available to other inmates, and not taken to the medical clinic to receive care. (*Id.* at 1-2).

Petoff further alleges that that he was denied 39 halal meals without a suitable religious alternative, denied access to a Quran, and denied a prayer rug, prayer beads, and a prayer schedule. (*Id.* at 2).

## II.    Statement of Undisputed Facts[3]

Petoff is currently housed at the United States Medical Center for Federal Prisoners located in Springfield, Missouri. (Doc. 44 ¶ 1; Doc. 48-1 ¶ 1). His current projected release date is April 1, 2028, via good conduct time release. (Doc. 44 ¶ 2; Doc. 48-1 ¶ 1).

As of April 20, 2026, Petoff filed approximately 100 administrative remedies during his incarceration within the BOP. (Doc. 44 ¶ 3; Doc. 48-1 ¶ 3). Defendants assert that none of those administrative remedies address the alleged denial of access to recreation activities or denial of access to the law library while Petoff was in the SHU due to his wheelchair, or that Petoff was denied halal meals and a Quran while in the SHU. (Doc. 44 ¶ 4). Petoff counters that he filed 13 relevant administrative remedies. (Doc. 48-1 ¶ 3).

## III.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Doc. 44; Doc. 48-1).

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

5

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B.    Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a

6

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of

material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV.    Discussion

### A.    Americans with Disabilities Act and Rehabilitation Act Claims

Defendants first argue that the ADA and RA claims must be dismissed because neither statute provides for individual liability. (Doc. 45, at 6).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States... solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a). The Third Circuit has explained that "[t]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d Cir. 2012)).

While the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual

8

capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488. 502 (D.N.J. 2008); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim"); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities"). Likewise, the Third Circuit has stated, in general terms, that individual liability is not available under the Rehabilitation Act. *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."). Thus, Petoff's claims under Title II of the ADA and Section 504 the Rehabilitation Act fail to the extent alleged against the individual Defendants, because these statutes do not provide for liability against individuals.

However, Petoff also asserts his claims against the Defendants in their official capacities. (Doc. 1, at 2). While Petoff attempts to plead claims under the ADA against the Defendants in their official capacities, it is well-settled that the ADA does not apply to the federal government, its agencies or employees. *See Smith v. Pallman*, 420 F. App'x 208,

9

214 (3d Cir. 2011); *see also Venter v. Potter,* 435 F. App'x 92, 95 n.1 (3d Cir. 2011) (stating "the entire federal government is excluded from the coverage of the ADA"); *Whooten v. Bussanich,* No. 04-cv-223, 2005 WL 2130016, at *7 (M.D. Pa. Sept. 2, 2005) (noting that the ADA does not contain a waiver of sovereign immunity so it does not apply to the federal government). Therefore, because the ADA does not apply to the federal government, its agencies or employees, the ADA claims against the Defendants in their official capacities will be dismissed.

B.    Exhaustion of Administrative Review[4]

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions. *See Rinaldi v. United States,* 904 F.3d 257, 265 (3d Cir. 2018); *see also Ross v. Blake,* 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting

---

[4]    Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome,* 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.,* 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 46).

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006))); *Jones v. Bock*, 549 U.S. 199, 211 (2007)

(stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court" (citation omitted)); *Booth v. Churner*, 532

U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such

administrative remedies as are available' before suing over prison conditions" (quoting 42

U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative

review process in accordance with the applicable procedural rules.'" *Downey v. Pa. Dep't of*

*Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting *Woodford*, 548 U.S.

at 88). "These procedural rules are supplied by the individual prisons." *Downey*, 968 F.3d

at 305 (citations omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (stating

that "the determination [of] whether a prisoner has 'properly' exhausted a claim…is made by

evaluating the prisoner's compliance with the prison's administrative regulations governing

inmate grievances"); *Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary

in a grievance to comply with the grievance procedures will vary from system to system and

claim to claim"); *Woodford*, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules"). A prisoner's

failure to follow a prison's procedural rules will result in a procedural default of their claims.

*See Spruill*, 372 F.3d at 230-32 (concluding that PLRA's exhaustion requirement includes

procedural default component); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir.

11

2010) (pointing out that *Spruill* held "that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures"). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them. *See Rinaldi*, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting *Woodford*, 548 U.S. at 93)). "Available means capable of use; at hand." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted). "An administrative remedy is unavailable when it 'operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (alterations in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271.

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may present the issue to the Warden within 20 days of the date of

the event giving rise to the administrative remedy request by filing a BP-9 form.  28 C.F.R. §

542.14.  The Warden has 20 days to respond.  28 C.F.R. § 542.18.  An inmate dissatisfied

with the Warden's response may submit an appeal on a BP-10 form to the BOP Regional

Director within 20 days.  28 C.F.R. § 542.15(a).  The Regional Director has 30 days to

respond to an appeal.  28 C.F.R. § 542.18.  If the Regional Director denies the appeal, the

inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-

11 form within 30 days.  28 C.F.R. § 542.15(a).  The Central Office has 40 days to respond.

28 C.F.R. § 542.18.  No administrative remedy is considered fully exhausted until it is

decided on its merits by the Central Office.  28 C.F.R. §§ 541.10-542.19.

In addition, Defendants note that the Department of Justice ("DOJ") has a process

for resolving disputes under the Rehabilitation Act that must be exhausted prior to bringing a

claim under the RA.  (Doc. 45, at 10-11).  The DOJ's process "applies to all allegations of

discrimination on the basis of handicap in programs or activities conducted by the agency."

28 C.F.R. § 39.170(a).

Here, Defendants seek an entry of summary judgment based on Petoff's failure to

exhaust his administrative remedies as required by the PLRA.  (Doc. 46, at 7-12).

Defendants have supported their argument with record evidence, including the declaration

of BOP Attorney Austin Langon and the BCP Administrative Remedy Generalized Retrieval.

(Docs. 44-1, 44-3).  Defendants argue that while in BOP custody, Petoff has not filed any

administrative remedies concerning his present claims, to wit, that he was denied access to

recreation activities and denied access to the law library while in the SHU due to his wheelchair, or that he was denied halal meals and a Quran while in the SHU. (*See id.*).

In response, Petoff asserts that he filed the following relevant administrative remedies: 1103524-F1, 1103525-F1, 1103527-F1, 1110058-F1, 1112972-F1, 1112974-F1, 1112974-F2, 1112972-F2, 1112972-R1, 1112974-R1, 1112974-A1, 1112972-A1, and 1112974-A2. (Doc. 48, at 1; Doc. 48-2, at 2-8). Those remedies are as follows.

On December 9, 2021, Petoff filed administrative remedy 1103524-F1, requesting five hours of recreation time per week in the SHU. (Doc. 44-3, at 27; Doc. 48-2, at 8). The institution denied the remedy. (*Id.*). There is no evidence that Petoff appealed this denial to the Regional or Central Offices. (*See* Doc. 44-3).

On December 9, 2021, Petoff filed administrative remedy 1103525-F1, requesting five hours of recreation per week in the SHU. (Doc. 44-3, at 27; Doc. 48-2, at 8). The institution voided the remedy because it was entered in error. (*Id.*). There is no evidence that Petoff appealed this denial to the Regional or Central Offices. (*See* Doc. 44-3).

Also on December 9, 2021, Petoff filed administrative remedy 1103527-F1, requesting access to the law library. (Doc. 44-3, at 28). The institution denied the remedy. (*Id.*). There is no evidence that Petoff appealed this denial to the Regional or Central Offices. (*See* Doc. 44-3).

On February 11, 2022, Petoff filed administrative remedy 1110058-F1, wherein he complained that he was not given a meal in October 2021. (Doc. 44-3, at 33; Doc. 48-2, at

6). The institution rejected the remedy as untimely filed. (*Id.*). There is no evidence that Petoff appealed this rejection to the Regional or Central Offices. (*See* Doc. 44-3).

On March 9, 2022, Petoff filed administrative remedy 1112972-F1, complaining that he was not being given recreation time. (Doc. 44-3, at 34). The institution rejected the remedy because Petoff grieved multiple issues in one administrative remedy. (*Id.*). On May 4, 2022, Petoff resubmitted his administrative remedy, designated as 1112972-F2, complaining that he was not being given recreation time. (*Id.* at 36). The institution rejected the remedy as untimely filed. (*Id.*). On May 24, 2022, Petoff appealed to the Regional Director, designated as administrative remedy 1112972-R1. (*Id.* at 37). The Regional Director rejected the remedy. (*Id.*). On June 23, 2022, Petoff appealed to the Central Office, designated as administrative remedy 1112972-A1. (*Id.* at 40). The Central Office rejected the remedy as untimely and filed at the wrong level and advised Petoff that he must submit a memo explaining why his initial BP-9 was untimely. (*Id.*).

On March 9, 2022, Petoff filed administrative remedy 1112974-F1, complaining that he was denied access to the law library. (Doc. 44-3, at 35). The institution rejected the remedy because Petoff grieved multiple issues in one administrative remedy. (*Id.*). On May 4, 2022, Petoff resubmitted his administrative remedy, designated as 1112974-F2, complaining that he was denied access to the law library. (*Id.* at 36). The institution rejected the remedy as untimely filed. (*Id.*). Petoff appealed to the Regional Director, designated as administrative remedy 1112974-R1. (*Id.* at 37). The Regional Director

15

rejected the remedy. (*Id.*). On June 23, 2022, Petoff appealed to the Central Office, designated as administrative remedy 1112974-A1. (*Id.* at 39). The Central Office rejected the remedy as filed at the wrong level and advised Petoff that if staff provides a memo stating that the late filing was not his fault, then he may resubmit his remedy to the level of the original rejection. (*Id.*). On August 29, 2022, Petoff filed another appeal to the Central Office, designated as administrative remedy 1112974-A2. (*Id.* at 44; Doc. 48-2, at 2). The Central Office rejected the remedy as filed at the wrong level and again advised Petoff that if staff provides a memo stating that the late filing was not his fault, then he may resubmit his remedy to the level of the original rejection. (*Id.*).

Two conclusions can be drawn from this grievance history.

First, while administrative remedies 1103524-F1, 1103525-F1, 1103527-F1, and 1110058-F1 are relevant and were filed during the relevant time period, there is simply no evidence of record that Petoff appealed these remedies to the Regional or Central Offices. (*See* Doc. 44-3). After the institution denied or rejected these remedies, the next step Petoff should have taken was to file a BP-10 appeal to the Regional Office within 20 days of the Warden's response, 28 C.F.R. § 542.14(a), and then, if unsatisfied with the Regional Director's response, file a BP-11 appeal to the Central Office within 30 days of the Regional Office's response, 28 C.F.R. § 542.15. Petoff failed to appeal the institution's responses at all. And so, Petoff abandoned administrative remedies 1103524-F1, 1103525-F1, 1103527-F1, and 1110058-F1 by failing to fully exhaust the administrative remedy process.

16

Second, while Petoff appealed administrative remedies 1112972 and 1112974 to the Central Office, they were not properly exhausted because they were dismissed on procedural grounds.

It is undisputed that the Central Office rejected administrative remedy 1112972 as "UTA MEM WRL OTH[,]" meaning that Petoff's appeal was untimely, the appeal was filed at the wrong level, and there were additional remarks explaining the reason for rejection. (*Id.* at 40). In the remarks section, the Central Office advised Petoff that he must submit a memo explaining why his initial BP-9 was untimely. (*Id.*). After receiving the Central Office's response, Petoff did not try to appeal again. (*See* Doc. 44-3).

It is also undisputed that the Central Office rejected administrative remedy 1112974 as "WRL DIR OTH[,]" meaning that Petoff's appeal was filed at the wrong level and there were additional remarks explaining the reason for rejection. (Doc. 44-3, at 39). In the remarks section, the Central Office advised Petoff that if staff provided a memo stating that the late filing was not his fault, then he may resubmit his remedy to the level of the original rejection. (*Id.*). After receiving the Central Office's response, Petoff did try to appeal again. (*Id.* at 44). However, he submitted his appeal to the Central Office. (*Id.*). It is undisputed that the Central Office again rejected the remedy as "WRL DIR OTH[,]" meaning that Petoff's appeal was filed at the wrong level and there were additional remarks explaining the reason for rejection. (*Id.*). In the remarks section, the Central Office once again advised Petoff that if staff provided a memo stating that the late filing was not his fault, then he may

17

resubmit his remedy to the level of the original rejection. (*Id.*). After receiving the Central Office's response, Petoff did not try to appeal again. (*See* Doc. 44-3).

The Administrative Remedy history sheet shows that Petoff never complied with the Central Office's instructions with respect to administrative remedies 1112972 and 1112974. (*See* Doc. 44-3). Thus, the record shows that Petoff failed to exhaust his administrative remedies as to numbers 1112974 and 1112972. A prisoner's failure to comply with the procedural and substantive requirements of the grievance policy results in procedural default, thereby precluding an action in federal court. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"); *Spruill*, 372 F.3d at 227-32.

As Defendants have provided evidence to support their failure to exhaust defense, the burden shifts to Petoff to produce evidence that the BOP administrative remedy process was not available to him. Petoff has failed to meet this burden.

In his opposition brief, Petoff argues that there were impediments to the administrative procedures, such as delays in receiving grievance forms and interference with his outgoing mail. (Doc. 48, at 2). Petoff does not provide any evidence, via an affidavit, declaration, or other statement made under penalty of perjury to support a claim that the administrative remedy process was not available to him. The Court finds that Petoff's statement is insufficient to survive Defendants' motion for summary judgment. "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a

motion for summary judgment."[5] *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).  The purpose of summary judgment proceedings "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.  Petoff asserts that he experienced delays in receiving grievance forms and interference with his outgoing mail, but he has not specified any grievances that he attempted to file, nor has he offered any evidence that could establish the veracity of his statement.  The Court is thus left with nothing other than Petoff's conclusory, unsupported, and self-serving statement in his opposition brief, which the Court finds insufficient to create a genuine dispute of material fact as to whether the grievance process was unavailable to him.  *See Gonzalez*, 678 F.3d at 263.  The record simply does not support a finding that the administrative process was unavailable to Petoff.  To the contrary, it establishes that Petoff had full and ready access to the administrative remedy process, as he filed 100 administrative remedies while in BOP custody, which "militates against the conclusion that [he] [was] impeded from exhausting administrative remedies." *Hubbard v. Danberg*, 408 F. App'x 553, 556 (3d Cir. 2010).  (*See also* Doc. 44-3).  The Court will accordingly grant summary judgment in favor of Defendants on the basis of Petoff's failure to exhaust administrative remedies.  *See Cobb v. Weyandt*, 359 F. App'x 285, 287 (3d Cir. 2009) (*per curiam*) (noting that the district court properly rejected the

---

[5]    Here, Petoff did not even file an affidavit.

19

argument that administrative exhaustion was unnecessary for claims brought under the ADA and RA).

## V.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Petoff leave to file a second amended complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The Court finds that amendment would be futile because Petoff cannot remedy the defects in the amended complaint—that the ADA and RA do not provide for individual liability; that the ADA does not apply to the federal government, its agencies or employees; and that Petoff failed to exhaust his administrative remedies.

Moreover, Petoff has "already had two chances" to set forth his claims. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

## VI.    Conclusion

As stated *supra*, the Third Circuit remanded this matter to allow Petoff to amend his claims under the ADA, RA, and RFRA. (Doc. 36-2, *Petoff v. Lt. Delmonico*, Appeal No. 24-2933 (3d Cir.)). This Court has addressed the concerns raised by Third Circuit in its opinion on remand. While Petoff filed an amended complaint, his claims under the ADA and RA are without merit and unexhausted, and to the extent that he raised claims under the RFRA,

those claims are likewise unexhausted.  As such, the Court will grant Defendants' motion to dismiss and for summary judgment.  (Doc. 43).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June _17_, 2026